Scott, C.J..
This is a proceeding in the nature of quo warranto, on the relation of the attorney-general, against the county commissioners, the county auditor, and county surveyor of Hamilton county. The information charges that the defendants, as a county board for the equalization of real property within that county, are usurping and exercising, without lawful warrant, the power and jurisdiction of equalizing the real property of certain portions of territory, *475 particularly described therein, all of which are within the boundaries of the city of Cincinnati, in said county, and subject to be equalized by the board of equalization of said city. The defendants answer, and for plea say, in substance, that while it is true that all the portions of territory described in the information are, and since the month of May, 1870, have been, within the territorial limits of said city of Cincinnati, yet that prior to that time and in October,. 1869, said tei’ritory was wholly outside of the city of Cincinnati, and formed portions of districts into which the county outside of said city had been duly divided for the purposes of valuation, and that the assessors duly elected for that purpose, in the respective districts to which the several portions of said territory belonged, before the same became a part of said city, had valued the real estate in their respective districts, that abstracts of such valuations had been forwarded by the auditor of Hamilton county to the auditor of State, which had been acted on by the State board of equalization, and that board had ordered a reduction of 19 per cent, on the city property and 5^- per cent, on the residue of the real estate of said county. Defendants further say that the present boundary lines of said city dissect many of the parcels of real property so valued by the assessors, and that valuations-cannot be apportioned till after equalization, and they claim that such equalization can only be legally made by the-county board. They admit the exercise of the jurisdiction stated in the information, and aver that, as the county board of equalization, they alone are authorized to exercise the same. A demurrer to this answer presents the question,, whether the county board of equalization, or that of the city,, is by law clothed with the power and charged with the duty of equalizing the valuations of the lots and real property within the territory stated in the answer to have been annexed to the city in the months of February, March, and May, 1870.
By the act of May 8, 1868 (S. & S. 751), amendatory of prior acts “ for the assessment and taxation of .property in this State, and for levying taxes thereon according to it» *476 true value in money,” it is provided, in the 4th section, that the county auditor, the county surveyor, and the county commissioners, or a majority of them, shall form a county board of equalization of the real property of their county, with the exception of the real property in cities of the first and second class, which shall be equalized by a special board as therein-after provided. They are required to meet on the first Tuesday after the first Monday of September, 1870, and every tenth year thereafter, at the auditor’s office, in the several counties, when the county auditor shall lay before them the returns of the real property made by the several - district assessors, of such county, with the additions he shall have made thereto, and they, after being sworn fairly and impartially to equalize the value of the real estate of the county, shall immediately proceed to do so, according to certain prescribed rules.
The next section provides for a special board for the equalization of the real property in cities of the first and second classes, to be composed of the county auditor and six citizens in each of said cities, to be appointed by the city council; .and that said board shall meet at the auditor’s office on the fourth Monday of October, 1870, and every tenth year thereafter, and shall have power to equalize the value of the read property within such city, and shall be governed by the rules prescribed in the preceding section, for the government of county boards of equalization.
These are the only sections which relate to the duties and jurisdiction of these decennial boards of equalization. Previous sections of the same act provide that the county commissioners of each county shall, at their June session in 1869, divide the cities of their county into suitable districts, and also the residue of the county into districts, in each of which an assessor is to be elected at the October election in 1869, .and these assessors are required to make return of their valuation of the real estate in their several districts to the county auditor, on or before the first Monday of July, in the year 1870.
In the case before us, the territory in question was not *477 within the limits of Cincinnati, in June, 1869, when the city and the residue of the county of Hamilton was divided into districts by the county commissioners. It was therefore properly included in and made to constitute parts of country districts, and we think it very clear that the valuation of all the-lots or tracts of land within it could be legally made only by the assessors of the country districts to which such lots or' tracts severally belonged. The defendants, as a county board of equalization, could not enter upon the discharge of their-functions till in September, 1870, and some four or five-months before that time all this territory had been duly annexed to and become part of the city of Cincinnati. Erom. the jurisdiction conferred on the defendants by statute, all the real property in the city was expressly excepted. The power' to equalize “ all the real property within the city ” was expressly conferred on a special board, which was required to-meet in October, 1870. Neither of these boards could be constituted, or have an existence as a board of equalization, till the time fixed for their first meeting respectively. Long before the county board was first organized, the territory in question became city property, and therefore the jurisdiction of that board to equalize it never attached. The mere fact that the valuation and return of this property were made by assessors of country districts, does not necessarily require its equalization by the county board, and the statute does not make the jurisdiction depend upon that circumstance, but upon the location of the property at the time when the power to equalize is to be exercised. As the county auditor, to whom all the valuations of property in the county are to be-returned, is a member of both boards, and as equalization-is not required to be made iy districts, we see no difficulty in the presentation to each board of the assessors’ valuations-of .all the real property within their respective jurisdictions. And as to lots or tracts of land which have been divided by the outer boundary line of the annexations, we see no more-difficulty in having the valuation of such tracts properly apportioned by one board than by the other. We apprehend; it is the duty of each board to see that the portion of any *478 such lot which lies within its jurisdiction is properly and fairly valued. It is, at least, certain that the statute makes no special provision for such a case, and we have no power to modify its plain terms by interpolating exceptions or provisos which are not clearly necessary in order to give effect to its manifest purpose.
The facts stated in defendants’ answer show that they are not invested by the statute with the jurisdiction which they are assuming to exercise, and the demurrer of the State must therefore be sustained, and judgment of ouster be entered.
Welch, White, Day, and McIlvaine, JJ., concurred.